**Sadie S. SNELLING and Kathryn J. Newman, Individually and as Heirs and Statutory Beneficiaries of Edith Elizabeth Bowman, Deceased, and as Representatives of the Estate of Edith Elizabeth Bowman, Deceased, Appellants,**

v.

**Steven D. MIMS, Individually, Brenda Ann Strickland, Individually, Somervell County Health Care Authority d/b/a Glen Rose Medical Center Nursing Home, and Mike Ford, P.M. Milam, Dorothy Gibbs, Evalene Howell, Sid Underwood, Nancy Willis, and Scot May, Jointly, Appellees.**

No. 10–01–308–CV.

Court of Appeals of Texas, Waco.

Dec. 31, 2002.

648

Mark S. Stewart, Law Office of Mark Stewart, Ft. Worth, for Appellants.

Alexis J. Fuller, Jr., Davis & Davis, P.C., Austin, for Appellees.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

After Edith Bowman died in a nursing home, her heirs brought suit for negligence and gross negligence against the Somervell County Health Care Authority, its board of directors, and staff members at the nursing home. All the defendants (Appellees) filed a plea to the jurisdiction claiming governmental (sovereign) immunity from suit, which the trial court granted. Appellants appeal from that final order of dismissal.

Appellants claim: (1) dismissing the cause for want of jurisdiction is procedurally incorrect; (2) the trial court erroneously failed to rule on objections to the affidavit of Gary Marks, executive director of the nursing home, which was part of the defendants' proof of immunity; and (3) the Appellees did not prove sovereign immunity. We will reverse in part and affirm in part.

### Controlling Statutes

Appellants' lawsuit includes a "negligence" claim against a health care provider—the Health Care Authority—alleged to be a governmental unit. Therefore it potentially falls under the requirements of both the Medical Liability and Insurance Improvement Act, TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01 (Vernon Supp.2002), and the Texas Tort Claims Act, TEX. CIV. PRAC. & REM.CODE ANN. ch. 101 (Vernon 1997 & Supp.2002). Furthermore, once a case is either settled or a final judgment issues in favor of (e.g., summary judgment based on sovereign immunity) or against the governmental unit, employees may claim immunity from liability regarding the same claims. TEX. CIV. PRAC. & REM.CODE ANN. § 101.106; *Dallas Co. Mental Health v. Bossley*, 968 S.W.2d 339, 343–44 (Tex. 1998); *Johnson v. Resendez*, 993 S.W.2d

723, 726 (Tex.App.-Dallas 1999, pet. dism'd w.o.j.).[1]

### Procedure for the Dismissal

■ Appellants first assert that a plea to the jurisdiction is an improper procedural vehicle for disposing of this lawsuit. We agree in part and disagree in part. They cite *Davis v. City of San Antonio,* and argue that sovereign immunity is not an issue that pertains to the trial court's jurisdiction. In *Davis,* the trial court granted judgment in favor of the city due to sovereign immunity; the court of appeals affirmed. *Davis v. City of San Antonio,* 752 S.W.2d 518, 520 (Tex.1988). The Supreme Court held that, because the city had not pled sovereign immunity as an affirmative defense, it waived the defense at trial; the trial court's jurisdiction was not at issue.

■ However, in 1999 in *Texas Department of Trans. v. Jones,* the Supreme Court interpreted *Davis* to apply only to immunity from liability, not immunity from suit. *Texas Department of Trans. v. Jones,* 8 S.W.3d 636, 638–39 (Tex.1999). The Court explained that immunity from liability is an affirmative defense which protects a governmental unit from judgment, and it must be pled by the defendant; but it does not deprive the trial court of jurisdiction. *Id.;* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (waiver of immunity from liability). On the other hand, immunity from suit derives from the absence of express consent from the Legislature to sue a governmental unit; plaintiff's petition should refer to the applicable statute or other express legislative consent,

and to the facts which support jurisdiction. *Texas Dept. of Criminal Justice v. Miller,* 51 S.W.3d 583, 587 (Tex.2001); *Jones,* 8 S.W.3d at 638–39; *MHMR v. Pearce,* 16 S.W.3d 456, 460 (Tex.App.-Waco 2000, pet. dism'd w.o.j.); TEX. CIV. PRAC. & REM.CODE ANN. § 101.025 (waiver of immunity from suit to the extent of liability created by Tort Claims Act). Immunity from suit does concern the trial court's subject matter jurisdiction, and a plea to the jurisdiction is a proper vehicle to challenge it.[2] *Jones,* 8 S.W.3d at 638–39; *Pearce,* 16 S.W.3d at 459. The Health Care Authority asserted immunity from suit. A plea to the jurisdiction was appropriate.

■ But the outcome is different for the individual defendants.[3] They joined in the plea to the jurisdiction, which we and other courts have held is procedurally incorrect. *Pearce,* 16 S.W.3d at 459–60; *University of Houston v. Elthon,* 9 S.W.3d 351, 354 (Tex.App.-Houston [14th Dist.] 1999, pet. dism'd w.o.j.) (dismissing appeals of individuals for want of jurisdiction); *Dallas County Community College Dist. v. Bolton,* 990 S.W.2d 465, 467 (Tex. App.-Dallas 1999, no pet.) (dismissing appeals of individuals for want of jurisdiction). Individuals cannot assert immunity from suit (sovereign immunity) because they are not governmental units. *Id.* Accordingly, claims against them may not be dismissed based on immunity from suit.

We overrule this issue regarding the Health Care Authority, but we sustain it regarding the individual Appellees.

---

**1.** *Cf. DeWitt v. Harris County,* 904 S.W.2d 650, 653 (Tex.1995) (government not liable if employees have official immunity from liability).

**2.** A motion for summary judgment is another vehicle. *E.g., Bland Independent School Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000).

**3.** We address these defendants separately because the issue on appeal globally addresses the dismissal order which applied to all defendants. TEX.R.APP. P. 38.1(e) (we review every subsidiary issue fairly included in each issue raised on appeal).

### Objections to Affidavit

█ In their response to the plea to the jurisdiction, Appellants made several objections to the affidavit of Gary Marks, which was attached to the plea to the jurisdiction. The objections alleged insufficiencies in an exhibit attached to the affidavit, *i.e.*, an unsigned, undated order of the county commissioner's court purportedly creating the Somervell County Health Care Authority. Appellants complain on appeal that the trial court never ruled on their objections.

The plea was filed on July 31, 2001. Appellants' response, with the objections and attached documents, was filed on August 7. The trial court sent a letter to the parties on August 24 stating it would grant the plea. The order granting the plea was signed on August 31 and filed on September 6. The Health Care Authority filed a supplemental affidavit of Ron Hankins, executed August 28, on September 20.

From this sequence of events, we cannot say that the dismissal was based solely on Marks's affidavit. Soon after it was filed, along with the plea, other evidence in the form of documents attached to Appellants' response to the plea was before the court, showing that the Health Care Authority was a governmental unit and that the nursing home was a part of it (see next section). Thus, we cannot say whether the trial court must have, by implication, overruled Appellants' objections. TEX.R.APP. P. 33.1(a)(2)(A) (ruling may be implicit). However, Appellants never objected to the court's refusal to rule on their objections, even in their motion for rehearing. *Id.* 33.1(a)(2)(B). Therefore, they failed to preserve a complaint of "failure-to-rule" for appellate review. *Id.; Summit Mach. Tool Mfg. Corp. v. Great N. Ins. Co.,* 997 S.W.2d 840, 851 (Tex.App.-Austin 1999, no pet.).

We overrule this issue.

### Immunity from Suit

A threshold question is whether the Health Care Authority is a "governmental unit" to which the narrow waiver of immunities from suit and liability in the Tort Claims Act apply. TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001(3)(B), 101.021, 101.025. Appellants argue that the proof was insufficient to establish that the Health Care Authority is a governmental unit.

█ We review a ruling on a plea to the jurisdiction *de novo. Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998). If the pleadings alone are determinative of the issue, then in our review we rely on them alone, construing them in the plaintiff's favor. *Tex. Ass'n of Business v. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993); *Jansen v. Fitzpatrick,* 14 S.W.3d 426, 431 (Tex.App.-Houston [1st Dist.] 2000, no pet.). However, the trial court may hear evidence if necessary to determine the jurisdictional facts; in that event, we also review the evidence. *Bland Independent School Dist. v. Blue,* 34 S.W.3d 547, 554–56 (Tex.2000); *Jansen,* 14 S.W.3d at 431.

### Evidence:

█ The Health Care Authority supplied affidavits to the trial court from Gary Marks, executive director of the nursing home, and Ron Hankins, Somervell County Attorney. Marks's affidavit states:

My knowledge of the facts stated herein comes from my background, training and experience as Executive Director of the Somervell County Health Care Authority d/b/a/ Glen Rose Medical Center. I am currently employed by Somervell County Health Care Authority d/b/a Glen Rose Medical Center which is located at 1202 Holden Street, Glen Rose, Texas, as Executive Director. I have

held this position since the Authority was established on November 22, 1993. Somervell County Health Care Authority is a political subdivision of the State of Texas as evidenced by Exhibit "A" attached hereto. Both Glen Rose Medical Center and Glen Rose Nursing Home were established by and under the Authority which owns and operates these facilities.

Exhibit A purported to be an order of the Commissioners Court of Somervell County, unsigned and undated, creating the Somervell County Health Care Authority. In the caption, which read: "The State of Texas—County of Harris," the word "Harris" had been interlined and "Somervell" had been written above it.

Hankins's affidavit confirmed the basic assertions in Marks's affidavit. It stated:

I am currently employed by Somervell County as County Attorney. I have held the position since January 1, 1993. As such, I have knowledge of the facts surrounding the creation of the Somervell County Health Care Authority. Somervell County Health Care Authority was created, and continues to exist, as a political subdivision of the State of Texas. Glen Rose Medical Center is wholly owned by Somervell County Health Care Authority, and Glen Rose Nursing Home is wholly owned and operated by Glen Rose Medical Center.

Hankins's affidavit was not filed until after the trial court issued its order. However, it was filed within the time during which the trial court had before it Appellants' motion for rehearing, which was overruled by operation of law. The record shows the affidavit was sent to the trial court, and we will consider it as part of the evidence.

Taken alone, these affidavits, which are conclusory, and the order might not be sufficient to prove that the Health Care Authority is a governmental unit which owns the nursing home. However, in their response to the plea to the jurisdiction, Appellants attached several documents which lend support to the Health Care Authority's claim:

● A recent document from the "Texas Department of Human Services" showing that the "Glen Rose Medical Center Nursing Home" is owned by the "Somervell County Health Care Authority."

● A document from 1994 from the "Department of Health and Human Services" showing that there was a change of ownership in December of 1993, and the "Glen Rose Medical Center Nursing Home" was now "D/B/A" for the "Somervell County Health Authority" which owned it. The document also shows that the "type of entity" for the "Somervell County Health Authority" is a "Health Authority," not a "sole proprietorship," "unincorporated association," "partnership," or "corporation."

● An "Assumed Name Certificate" from 1993 showing that the "Somervell County Health Care Authority" "is a Hospital Board."

We also find an allegation in Plaintiff's Original Petition that the "Somervell County Health Care Authority" is doing business as "Glen Rose Medical Center Nursing Home."

Considering the entire record, we find that the Health Care Authority is a "governmental unit" and that it wholly owns and operates the nursing home.

*Health Care Statutes:*

Before discussing whether the pleadings invoke the court's jurisdiction, we must determine whether statutes which define and describe the authority of public health entities are dispositive of this issue. The Health and Safety Code provides for a

number of means by which a county may create, own, and operate facilities to deliver health care. For example, chapter 221 allows a county to create a corporation to provide, *inter alia*, hospital and nursing home facilities. TEX. HEALTH & SAFETY CODE ANN. §§ 221.003(8), (10), 221.011 (Vernon 2001). A county may own and operate a nursing home if the county meets the licensing requirements outlined in chapter 242. *Id.* §§ 242.002(7), 242.031 (Vernon 2001). A county may also create a "county hospital authority"—a "political subdivision"—to create and operate hospitals and other facilities, but *not* nursing homes.[4] *Id.* §§ 264.002(1), (5), 264.003 (Vernon 2001).

Although in the alleged order of the Commissioners Court, attached to the plea to the jurisdiction, the commissioners called the entity they created a "Health Care Authority," there is no reference in the statutes to that term. Instead, what the commissioners created, according to the express language in the order, is a "hospital authority" under chapter 264. The term "Health Care Authority" is part of the name of the entity the commissioners created. However, by express statutory prohibition, a county hospital authority may not own and operate a nursing home. *Id.*[5] The quagmire that presents to us is: although the Health Care Authority may have been legally created as a county hospital authority, its actions in owning and operating the nursing home may not be authorized by statute.

The issue then becomes whether sovereign immunity applies when the complained-of negligence arises from an activity not authorized by law, *e.g.*, operation of a nursing home. In resolving this issue, we start with the proposition that there is no exception to the rule that the State is immune from suit unless the Legislature has expressly consented to suit, either by statute or resolution.[6] *Bossley*, 968 S.W.2d at 341–343 (discussing history of attempts to abolish sovereign immunity); *Federal Sign v. Texas Southern University*, 951 S.W.2d 401, 405 (Tex.1997); *Edinburg Hosp. Authority v. Trevino*, 941 S.W.2d 76, 81–83 (Tex.1997) (County hospital authorities are "immune from liability for all their actions."). For example, the State cannot be sued for breach of contract unless the Legislature has given consent to sue. *General Services v. Little-Tex Insulation*, 39 S.W.3d 591, 594 (Tex.2001) (by contracting, immunity from liability is waived, but not immunity from suit). Furthermore, immunity from suit applies even if an intentional tort has been committed. *Texas Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 580 (Tex.2001); TEX. CIV. PRAC. & REM.CODE ANN. § 101.057 (Vernon 1997).

This is not to say there is no remedy when the government acts *ultra vires, i.e.*, beyond its authority. *San Antonio River Authority v. Garrett Brothers*, 528 S.W.2d 266, 270–71 (Tex.Civ.App.-San Antonio 1975, writ ref'd n.r.e.) (River Authority not liable for its *ultra vires* acts); *cf. Pasadena Police Officers Ass'n v. City of Pasadena*, 497 S.W.2d 388, 394 (Tex.Civ.App.-

---

**4.** Section 223.002 defines "hospital project" to exclude nursing homes. TEX. HEALTH & SAFETY CODE ANN. § 223.002 (Vernon 2001).

**5.** Marks's affidavit states that the authority was created in 1993, which is after chapters 223 and 264 replaced former articles that did not exclude nursing homes from the types of projects a hospital authority could be involved in. TEX.R. CIV. STAT. ANN. arts. 4437e–2(g),

4494r § 2 (Vernon 1976). Therefore, the county cannot claim that when it created the authority, it could legally own and operate a nursing home.

**6.** TEX. CIV. PRAC. & REM.CODE ANN. ch. 107 (Vernon 1997) (procedures for obtaining a Legislative resolution to sue).

Houston [1st Dist.] 1973, writ ref'd n.r.e.) (city not estopped from asserting its *ultra vires*—therefore void—act was not valid). For some examples:

- Individuals who perform unauthorized acts on behalf of the government may be sued in their individual capacities to prevent further unauthorized acts. *E.g., Griffin v. Hawn,* 161 Tex. 422, 341 S.W.2d 151, 153 (1960) (State Highway Department could not be sued to enjoin it from trespassing, but the employees who trespassed could be.).

- Declaratory judgment actions may be maintained against the government to have an *ultra vires* act declared void. *Texas Highway Com'n v. Texas Ass'n of Steel Imp., Inc.,* 372 S.W.2d 525, 530–31 (Tex.1963) (Suit to have Highway Commission order declared invalid as violative of competitive bidding statute was not a suit against the State.); *Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 712 (1945) (Declaratory judgment action is not a suit against the State because it does not seek damages or enforcement of a contract); *TRST Corpus, Inc. v. Financial Center,* 9 S.W.3d 316, 323 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (citing *Cobb* ); *Texas Parks & Wildlife Dept. v. Callaway,* 971 S.W.2d 145, 151–52 (Tex.App.-Austin 1998, no pet.) (citing *Cobb* ).

- A plaintiff may seek injunctive relief when the government acts in a way that exceeds its authority granted by the constitution. *Director, Etc. v. Printing Industries Ass'n,* 600 S.W.2d 264 (Tex.1980).

- Constitutional claims fall outside the immunity bar, *e.g.,* a claim of a "taking." *Garrett Brothers,* 528 S.W.2d at 272.

- Federal law provides relief from intentional violations of constitutional rights. 42 U.S.C. § 1983 (1994).

We conclude that the operation of the nursing home by the Health Care Authority in violation of statute does not remove the Health Care Authority from the protection afforded by sovereign immunity. Now we turn to whether Appellants' pleadings allege facts which show a waiver of immunity under the Tort Claims Act.

*Pleadings:*

■ As a "governmental unit," the Health Care Authority cannot be liable for negligence unless one of the types of events listed in section 101.021 has occurred. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021. Applicable here, Appellants must prove that Ms. Bowman's death was "caused by a condition or use of tangible personal or real property." *Id.* § 101.021(2). To determine whether the trial court has jurisdiction, we examine the pleadings for allegations of "a condition or use of tangible personal or real property" which caused her death. *Id.;* *Miller,* 51 S.W.3d at 587 (examining pleadings to find allegations sufficient under the Tort Claims Act); *Air Control Bd.,* 852 S.W.2d at 446; *Jansen,* 14 S.W.3d at 431; *Pearce,* 16 S.W.3d at 460.

Over a span of fourteen pages, Appellants' Original Petition makes numerous accusations about negligence by the defendants. The following are representative:

- Ms. Bowman fell from her wheelchair while at the nursing home and sustained a head injury. She was taken to the hospital and treated.

- Back at the nursing home, "[n]othing had been done to properly attend to Ms. Bowman following the incident."

- Two days later Ms. Bowman was again taken to the hospital; she died two weeks later. The cause of death was

listed as "Alzheimer's Disease with a contributing factor as non-insulin dependent diabetes mellitus," "concussion," and "congestive heart failure."

- There were numerous negligent acts and omissions of the defendants—fourteen pages in the original petition.

Critical to the question of immunity from liability, none of the allegations contained in the fourteen pages is about a negligent "condition or use of tangible personal or real property" which caused the death. Rather, the allegations are for "failure to" perform a wide variety of acts, *e.g.,* failure to diagnosis and treat Ms. Bowman's condition, failure to properly report the injuries to her relatives and to State authorities, and failure of management to properly supervise employees. Other allegations are for physical assault on Ms. Bowman by nursing-home staff, ignored by management. Appellants' pleadings do not allege facts which would bring their claim under the waiver of immunity from liability in section 101.021(2). *Pearce,* 16 S.W.3d at 460–61. Consequently, there is no waiver of immunity from suit, and the trial court lacks subject matter jurisdiction of the claims against the Health Care Authority. TEX. CIV. PRAC. & REM.CODE ANN. § 101.025.

*Result*

Finding that their claims against the Health Care Authority are barred by sovereign immunity, we overrule Appellants' issue.

*Conclusion*

We sever the claims of Appellants against all individual Appellees, *i.e.,* Appellees other than the Health Care Authority, reverse the order of dismissal as to them, and remand the severed cause to the trial court for further proceedings. We affirm the order granting the plea to the jurisdiction regarding the Health Care Authority.

Justice GRAY dissenting and concurring.

TOM GRAY, Justice, dissenting and concurring.

The appellants have never argued to any court at any time the distinction that the majority makes regarding the proper procedure by which their claims have been addressed. The appellants' third issue argues that the trial court erred in granting the plea to the jurisdiction. Essentially they are arguing that a plea to the jurisdiction is not the proper procedural vehicle for disposition of this case because immunity, they believe, does not deprive the trial court of jurisdiction. They draw no distinction between the defendant that is a governmental subdivision and the individual defendants. Their argument is not based upon the differing status of the various defendants. We should not make this argument for them. We should not reverse judgments based on arguments not made by the parties unless it relates to our lack of jurisdiction. *See Allright v. Pearson,* 735 S.W.2d 240 (Tex.1987)(per curiam); *Cotton v. Cotton,* 57 S.W.3d 506, 509 (Tex.App.-Waco 2001, no pet.). Accordingly, I respectfully dissent from the portion of the judgment that reverses and remands the claims of the individual defendants and concur in the remainder of the judgment.